**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JEFFREY KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE LINCOLN NATIONAL<br>LIFE INSURANCE COMPANY, | )<br>) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

COMES NOW Plaintiff, Jeffrey King, and for his claims and causes of action against Defendant, The Lincoln National Life Insurance Company, states as follows:

PARTIES

1. Jeffrey King ("King") is a resident and citizen of the State of Missouri.

2. Defendant The Lincoln National Life Insurance Company ("Lincoln") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance, aka the Missouri Department of Commerce and Insurance, is authorized to accept service of process on behalf of Lincoln.

JURISDICTION AND VENUE

3. King brings his claim pursuant to ERISA and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

9. Trial is to be held in Kansas City, Missouri.

## STATEMENTS OF FACT

10. King's occupation was as an outside sales representative, working for Sunbelt Rentals (Sunbelt) Inc.

11. On November 11, 2021, King became unable to work due to a combination of impairments, primarily chest pain, lower back pain, and anxiety.

12. The physical demands of King's position involved: frequently traveling and interacting with clients, driving from one location to the next, client networking, and complex reasoning tasks including preparing detailed proposals, coordinating project, and developing sales plans to expand Sunbelts customer base.

13. Sunbelt sponsored a group short-term disability ("STD") benefits plan ("Plan") for its participating employees.

14. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

15. The Plan offered disability benefits to qualifying Sunbelt employee Plan participants.

16. At all relevant times, King has been a participant and covered person under the terms of the Plan.

17. Lincoln is the administrator of the Plan.

18. Sunbelt delegated or attempted to delegate the function of issuing STD claim determinations to Lincoln.

19. Sunbelt and Lincoln entered an administrative services contract through which Sunbelt paid Lincoln for acting as claims administrator.

20. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to STD benefits, and provide that a Participant is entitled to disability benefits if he or she becomes "Totally Disabled" or suffers from "Total Disability."

21. The terms "Disability or Disabled" are defined as follows:

> **TOTAL DISABILITY** or **TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

22. King made a timely application for STD benefits and supplied Lincoln with evidence establishing that he was "disabled" under the Plan and entitled to benefits.

23. On February 8, 2022, Lincoln denied King's claim for STD benefits.

24. After receiving notice of this denial, King's counsel requested a copy of his STD claim file.

25. On August 7, 2022, King submitted a written STD appeal to Lincoln.

26. On October 12, 2022, Lincoln sent King a denial letter stating that the medical records do not provide clinical findings that support severity of his symptoms that would result in restrictions/limitations as of November 12, 2021.

27. After receiving notice of this denial, King's counsel requested a copy of his STD claim file.

28. On or about April 7, 2023, King submitted his second written appeal to Lincoln's second denial.

29. On June 13, 2023, Lincoln sent a final denial.

30. Both the Employee Retirement Security Act ("ERISA") and the Policy itself require such denials to provide specific information, including:

   a. The specific reason(s) the claim was denied.

   b. Specific reference to the Policy provision(s) on which the denial was based.

   c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

   d. On any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically related exclusion or limitation involved in the decision.

   e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

31. Lincoln's denials failed to provide all of the information required under ERISA.

32. King has at all relevant times met the definition of "Disability or Disabled" under the Plan and is entitled to STD benefits.

33. King's claims are not barred or limited by any valid exclusions contained in the Plan.

34. King has exhausted his administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

35. King realleges the preceding paragraphs as if fully set forth herein.

36. King is entitled to all unpaid and accrued STD benefits, as Lincoln:

a. Made an unfavorable decision without substantial evidence;

b. Failed to properly consider King's medical impairments and resulting limitations; and

c. Issued an unfavorable decision that was arbitrary and capricious.

37. Pursuant to 29 U.S.C. § 1132(a)(1)(b), King is entitled to an award of actual damages for losses suffered.

38. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

39. Lincoln has not satisfied its obligation to pay King's STD benefits.

40. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), King prays for judgment against Lincoln for unpaid STD benefits, attorney's fees, costs, and prejudgment interest.

COUNT II
29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

41. King realleges the preceding paragraphs as if fully set forth herein.

42. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "Exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

43. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the

interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

44. Lincoln, the Plan's designated claims administrator, is a fiduciary.

45. King participated in and benefitted from the Plan as previously indicated.

46. Lincoln's claims management practices are motivated by financial incentives in its administrative services agreement with Sunbelt.

47. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Lincoln operates under an inherent conflict of interest.

48. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

49. Lincoln breached its fiduciary duty in:

   a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations; and

   b. Refusing to utilize fully executed authorizations to attempt to obtain evidence relevant to King's claim for benefits; and

   c. Engaging in a structural conflict of interest by assuming the role of both claims' administrator and payor of benefits; and

   d. Improperly engaging and/or attempting to engage in ex parte communications with King after being advised that King was represented by counsel and instructed that all communications should be directed to her counsel.

50. Lincoln denied King's STD benefits for the purpose of elevating its financial interests. In

doing so, it breached its fiduciary duties.

51. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both King and the Plan's participants and beneficiaries generally.

52. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

53. The acts committed by Lincoln in breaching its fiduciary duty are unique from the facts forming the basis of its wrongful denial of benefits.

54. Lincoln's violations of regulations alone allows King the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

55. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

56. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), King prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

**BURNETTDRISKILL**, Attorneys

By: */s/ Derrick A. Pearce*
Derrick A. Pearce, Mo. #42793

Kyle H. Sciolaro, Mo. #64568
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF